(No. 85-CC-0192—■■■■■■)

ESTATE OF PHYLLIS LA SHAWN RUSSELL, by PHYLLIS DAVIS, Representative, Claimant, *v*. THE STATE OF ILLINOIS, Respondent.

*Order filed August 9, 1990.*

GEORGE C. HOWARD, for Claimant.

NEIL F. HARTIGAN, Attorney General (DANIEL BRENNAN, Assistant Attorney General, of counsel), for Respondent.

## ORDER

DILLARD, J.

The Claimant, Phyllis Davis, the duly appointed administrator of the Estate of Phyllis LaShawn Russell, brings this action of negligence on behalf of the decedent, who was six years of age at the time of her death and was residing in a foster home in which she had

been placed by the State of Illinois, Department of Children and Family Services (DCFS).

The complaint alleges that through wrongful acts and neglect and default of the foster parents, the decedent was administered an overdose of medicine which resulted in her death; that DCFS had a duty to place the decedent in a safe foster home where the parents would provide reasonable care.

The record in this cause discloses that the decedent was placed in protective custody by DCFS on August 20, 1980, pursuant to the provision of the Abused Neglected Child Reporting Act (ANCRA) (Ill. Rev. Stat. 1979, ch. 23, par. 2051 *et seq.*). On August 22, 1980, the decedent was placed in the custody of Respondent, as temporary guardian, pursuant to order of the court. The proceedings with respect to guardianship resulted from a report to Respondent alleging that the decedent and her sisters were being physically and sexually abused by a non-family member residing in the same domicile with the natural mother.

The facts further reveal that during the initial investigative process, the decedent was hospitalized at LaRabida Children's Hospital for clinical evaluation, during which period the decedent exhibited sporadic bed-wetting. The drug Tofranil was prescribed to control this problem. A psychological evaluation of the decedent at age 4 discloses that decedent had a speech deficit and measured by the Stanford Benet Intelligence Scale, she had obtained a mental age of three years and ten months, which places her as functioning within the high end of the mentally defective range of intelligence. The staff psychologist administering the test, recommended that decedent be placed "in a long-term supportive home environment."

In August 1981, Respondent placed the decedent and her sister in a foster-home setting, with Mr. and Mrs. Henry Franklin. Mrs. Franklin is the mother-in-law of the decedent's maternal aunt. The foster parents had cared for numerous other wards of Respondent apparently with no complaints. While in the foster care of the Franklins, the decedent somehow obtained and ingested an overdose of the drug Tofranil, which proved fatal. The report of the Cook County medical examiner indicated the cause of death to be an overdose of Tofranil. No criminal charges were ever filed against the Franklins.

The Claimant's theory of liability is that Respondent was negligent in selecting the Franklins as foster parents in view of Decedent's emotional problems which were manifested by her bed wetting, speech impediment and mental condition. The condition of the decedent should have influenced Respondent to run a background check on the foster parents. However, the record indicates that the Franklins had, on at least 10 or 12 prior occasions, housed DCFS wards without any record of complaints or improper care. Therefore, a background check of the foster parents would have only disclosed a clean record. Further, the very inexplicable act of the Decedent, without any apparent cause or provocation, could have occurred with any foster parent, no matter how highly qualified. The foster parents selected not only had a clean past record, but there was some familial setting between the decedent and one of the foster parents since she was the maternal aunt of the mother-in-law of the decedent's natural mother.

The Claimant further contends that Respondent should have advised the foster parents that the Decedent needed consistent counseling due to her aforesaid

emotional problems. This argument is also without merit. The psychological evaluation of LaRabida Children's Hospital, mentioned *supra,* at the request of Respondent, made recommendations of its findings and there is nothing in the record to indicate that said recommendations were not followed.

The Claimant's theory that the advanced age of the foster parents was an act of delinquency is further without merit. It is clear that the experience of the Franklins as foster parents qualified them to provide the necessary care for the decedent.

The prescription of Tofranil was made in the best judgment of qualified professional medical personnel. Thus, the allegation that prescribing Tofranil was negligent is also without merit.

Therefore, the Claimant has failed to show that the act of the Respondent in selecting the foster parents in the present claim was an act of negligence. In addition, the Claimant has failed to show that the foster parents were negligent and caused the death of Phyllis Russell.

It is therefore ordered that this claim is denied and the Claimant's complaint is dismissed for the aforementioned reasons.